CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

AUG 30 2018

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| RUSSELL EARL KIDD, JR., | ) |
| Plaintiff, | ) Civil Action No. 7:18CV00007 |
| v. | ) **MEMORANDUM OPINION** |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) By: Hon. Glen E. Conrad<br>) Senior United States District Judge |
| Defendant. | ) |

Plaintiff has filed this action challenging the final decision of the Commissioner of Social Security denying plaintiff's claim for a period of disability and disability insurance benefits under the Social Security Act, as amended, 42 U.S.C. §§ 416(i) and 423. Jurisdiction of this court is established pursuant to 42 U.S.C. § 405(g). This court's review is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that plaintiff failed to meet the requirements for entitlement to benefits under the Act. If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966). Stated briefly, substantial evidence has been defined as such relevant evidence, considering the record as a whole, as might be found adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 401 (1971).

The plaintiff, Russell Earl Kidd, Jr., was born on January 14, 1964. He eventually completed his high school education and one year of college courses. (Tr. 204). Mr. Kidd has been employed in the past as a district manager for various restaurant chains. (Tr. 40, 204, 214). He last worked on a regular and sustained basis in February of 2012. (Tr. 213, 255). On August 19, 2013, Mr. Kidd filed an application for a period of disability and disability insurance benefits.

In filing his current claim, Mr. Kidd alleged that he became disabled for all forms of substantial gainful employment on February 1, 2012, due to back problems, muscle/nerve damage, arthritis, and chronic pain. (Tr. 203). Mr. Kidd now maintains that he has remained disabled to the present time. The record reveals that Mr. Kidd met the insured status requirements of the Act at all relevant times covered by the final decision of the Commissioner. See generally 42 U.S.C. §§ 416(i) and 423(a).

Mr. Kidd's application was denied upon initial consideration and reconsideration. He then requested and received a de novo hearing and review before an Administrative Law Judge. In an opinion dated February 21, 2017, the Law Judge also determined, after applying the five-step sequential evaluation process, that Mr. Kidd is not disabled.* See 20 C.F.R. § 404.1520. The Law Judge found that Mr. Kidd suffers from a severe impairment in the form of degenerative disc disease, but that such impairment does not meet or equal the requirements of a listed impairment. Tr. 19-20). The Law Judge then assessed Mr. Kidd's residual functional capacity as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. [§] 404.1567(b) except the claimant can frequently crouch, kneel, and balance but only occasionally crawl, stoop, and climb ramps, stairs, ladders, ropes, and scaffolds. The claimant should avoid all work around vibrations and hazards, such as open machinery and unprotected heights.

(Tr. 20). Given such a residual functional capacity, and after considering testimony from a vocational expert, the Law Judge determined that Mr. Kidd retains sufficient functional capacity to return to his past relevant work as a district manager. (Tr. 23). In the alternative, the Law Judge

---

* The process requires the Law Judge to consider, in sequence, whether a claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and (5) if not, whether he can perform other work in the national economy. 20 C.F.R. § 404.1520. If a decision can be reached at any step in the sequential evaluation process, further evaluation is unnecessary. Id.

2

found that if even if Mr. Kidd is disabled for past relevant work, he retains the capacity to perform other work roles existing in significant number in the national economy. Accordingly, the Law Judge concluded that Mr. Kidd is not disabled, and that he is not entitled to a period of disability or disability insurance benefits. See 20 C.F.R. § 404.1520(f)-(g). The Law Judge's opinion was adopted as the final decision of the Commissioner by the Social Security Administration's Appeals Council. Having exhausted all available administrative remedies, Mr. Kidd has now appealed to this court.

While plaintiff may be disabled for certain forms of employment, the crucial factual determination is whether plaintiff is disabled for all forms of substantial gainful employment. See 42 U.S.C. § 423(d)(2). There are four elements of proof which must be considered in making such an analysis. These elements are summarized as follows: (1) objective medical facts and clinical findings; (2) the opinions and conclusions of treating physicians; (3) subjective evidence of physical manifestations of impairments, as described through a claimant's testimony; and (4) the claimant's education, vocational history, residual skills, and age. Vitek v. Finch, 438 F.2d 1157, 1159-60 (4th Cir. 1971); Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

After a review of the record in this case, the court is constrained to conclude that the Commissioner's final decision is supported by substantial evidence. The record reveals that Mr. Kidd presented to Carilion Clinic's Colonial Avenue Family Practice in September of 2011 with complaints of chronic back pain. Mr. Kidd related the pain to a compression fracture that he suffered as a result of a motor vehicle accident in 2002, and he reported that the pain had been manageable until two weeks prior to the appointment. (Tr. 318). On physical examination, Mr. Kidd displayed tenderness in the area of the lower scapula, which was slightly worse on the right side. (Tr. 320). The examining physician, Dr. William Whitney, assessed plaintiff with back

3

pain, a thoracic compression fracture, and degenerative joint disease of the thoracic spine. (Tr. 320). He administered a Depo-Medrol injection and prescribed Percocet for pain. (Tr. 320-21).

In November of 2011, Mr. Kidd sought treatment from Dr. Curtis Bakhit, a pain management specialist who had previously seen plaintiff in 2002. Dr. Bakhit noted that plaintiff has "a history of T7 vertebral body fracture," and that his thoracic pain had previously responded well to injection therapy. (Tr. 278). An examination of plaintiff's thoracic spine revealed paravertebral tenderness in the mid-thoracic region. Plaintiff did not have any midline tenderness and his range of motion was adequate, but he exhibited pain upon extension. (Tr. 279). Dr. Bakhit performed a nerve block injection at T6-7 and T7-8, and provided a prescription for Percocet. (Tr. 279).

Mr. Kidd returned to Dr. Bakhit on December 12, 2011 and reported that he had experienced a "noticeable reduction of his pain after the last injection" and was "doing better." (Tr. 281). Dr. Bakhit administered another nerve block injection and instructed plaintiff to return for a possible repeat injection in two months, if necessary. (Tr. 281-83).

Follow-up notes from Dr. Bakhit indicate that Mr. Kidd returned for nerve block injections approximately every two to three months in 2012 and the first half of 2013. During the physical examinations, Mr. Kidd displayed paravertebral tenderness and occasionally reduced range of motion upon extension, but his deep tendon reflexes were normal and his sensation was intact bilaterally in the upper extremities. (Tr. 284, 287, 290, 293, 296, 301, 341-42). Dr. Bakhit noted on multiple occasions that plaintiff had experienced a "significant" or "greater than 50%" reduction of his symptoms following the previous injections, and that the prescribed pain medication had proven to be helpful. (Tr. 284, 287, 290, 293, 296, 301).

In November of 2013, after going without injection therapy for several months for financial reasons, Mr. Kidd reported that his symptoms had escalated. (Tr. 343). Dr. Bakhit administered a nerve block injection at levels T7-9, T9-10, and T10-11. He also completed a residual functional capacity questionnaire, on which he opined that plaintiff can occasionally lift no more than ten pounds, sit for approximately three hours in an eight-hour workday, stand or walk for approximately two hours in an eight-hour workday, and engage in only limited reaching. (Tr. 310-11). Dr. Bakhit also opined that plaintiff would need to take one or two unscheduled breaks during an eight-hour workday, and that he would need to be absent from work more than four times a month as a result of his physical impairment. (Tr. 310-11).

Mr. Kidd returned to Dr. Bakhit for another nerve block injection in February of 2014, which reportedly provided a "50% reduction of his symptoms for two months." (Tr. 346, 351). After the pain "started to gradually return," plaintiff received another nerve block injection on May 19, 2014. (Tr. 351). Examination notes from Dr. Bakhit reveal that plaintiff continued to receive injection therapy every two or three months, and that he reported experiencing positive results from the course of treatment. (Tr. 354, 377, 382, 387, 392, 397, 402, 412, 415).

The record indicates that Mr. Kidd received his last nerve block injection on December 18, 2015. (Tr. 377). On May 12, 2016, plaintiff advised Dr. Bakhit that he was "doing fairly well with [the] present regimen of medications" and that he wanted to "hold off" on injections for the time being. (Tr. 369). Likewise, on July 14, 2016, plaintiff reported that his "mid back pain continue[d] to be fairly well controlled" and that he wanted to "hold off on procedures for right now." (Tr. 364). The same was true in the fall of 2016. Dr. Bakhit noted that Mr. Kidd's pain was "adequately addressed with the use of Percocet and lidocaine" and that plaintiff denied having any side effects from the medication. (Tr. 359, 434).

On September 12, 2016, Dr. Bakhit completed another physical assessment of plaintiff's ability to perform work-related tasks. Dr. Bakhit opined that plaintiff can never lift as much as ten pounds, that he can sit for a total of two hours in an eight-hour workday, and that he can stand or walk for a total of two hours in an eight-hour workday. (Tr. 431). Dr. Bakhit further opined that plaintiff would need to take unscheduled breaks every fifteen minutes and that his impairment would likely cause him to be absent from work more than four times a month. (Tr. 431-32).

At the administrative hearing held on November 29, 2016, Mr. Kidd testified that he stopped working due to chronic pain and that the pain had progressively worsened. (Tr. 41-42). Plaintiff estimated that he can walk a block on a good day before his back begins to spasm and that he can comfortably lift no more than five pounds. (Tr. 45-46). Mr. Kidd further testified that he "rarely leave[s] the house" other than to go to the grocery store or the doctor. (Tr. 47, 58). Plaintiff also testified, however, that he owns a cabin an hour and a half away that he occasionally visits, and that he had driven to Myrtle Beach, South Carolina to visit his girlfriend on one occasion during the previous year. (Tr. 54-56).

When Mr. Kidd completed the adult function report in November of 2013, he indicated that he is capable of performing light house cleaning and preparing meals, that he takes care of his pets, and that he goes outside on a daily basis. (Tr. 221-24). Plaintiff also reported that he goes to the store on a weekly basis and that he is able to drive and go out alone. (Tr. 224).

After considering all of the evidence of record, the Law Judge determined that Mr. Kidd's physical problems are not so severe as to prevent performance of lighter forms of work activity. In making this determination, the Law Judge found that Mr. Kidd's allegations of disabling physical limitations are not entirely consistent with the medical evidence and other evidence in the record, including plaintiff's own statements regarding his daily activities and his trips out of town.

(Tr. 23). The Law Judge further emphasized that Mr. Kidd "has not generally received the type of medical treatment one would expect for a totally disabled individual," and that the treatment he has received has been routine and/or conservative in nature and generally successful in controlling his symptoms. (Tr. 23).

The Law Judge also declined to accept Dr. Bakhit's opinions regarding plaintiff's ability to work. The Law Judge emphasized that the limitations noted by Dr. Bakhit were inconsistent with the medical evidence as a whole, including the physical findings documented in Dr. Bakhit's treatment notes. (Tr. 22). The Law Judge observed that while plaintiff displayed "bilateral paravertebral tenderness with a diminished range of motion and pain on extension and flexion," his "sensorimotor function was intact," "there was no sciatic tension," and there was "no objective indication of weakness or gait abnormality." (Tr. 22). The Law Judge also noted that Dr. Bakhit's more recent examination notes indicate that plaintiff's pain was adequately controlled with his medicinal regimen of Percocet and lidocaine patches. (Tr. 23). The Law Judge further observed that plaintiff had not found it necessary to undergo injection therapy in over a year, and that there was no indication that he required surgery or other more aggressive forms of treatment for his musculoskeletal impairment. (Tr. 22).

The Law Judge ultimately assigned greater weight to the opinions of Dr. Luc Vinh and Dr. Gene Godwin, who reviewed the record at the request of the state agency. Both physicians opined that plaintiff is capable of meeting the lifting requirements for light work and that he can sit, stand, and/or walk for approximately six hours in an eight-hour workday. (Tr. 76-78, 87-89). Dr. Godwin also found that plaintiff has occasional postural limitations and that he should avoid concentrated exposure to vibrations or hazards. (Tr. 88-89). Dr. Godwin further opined that Dr.

7

Bakhit's assessment of plaintiff's work-related limitations was inconsistent with the totality of the evidence of record. (Tr. 89).

On appeal to this court, Mr. Kidd, through counsel, argues that the Law Judge erred in failing to give significant weight to Dr. Bakhit's opinions. Having reviewed the record in its entirety, however, the court concludes that substantial evidence supports the Law Judge's decision. Although the opinions of a treating source are generally entitled to greater weight under the administrative regulations applicable to plaintiff's claims, see 20 C.F.R. § 404.1527(c)(2), the court believes that, in the instant case, the Law Judge properly determined to give more weight to other medical evidence, including the reports from Dr. Vinh and Dr. Godwin. The Law Judge reasonably concluded that the state agency physicians' assessment of Mr. Kidd's residual functional capacity is more consistent with the clinical findings, the course of treatment provided, and the fact that conservative treatment measures have been generally successful in controlling plaintiff's symptoms. In short, the court believes that the Law Judge's decision to discount the opinions offered by Dr. Bakhit, and to rely instead on the opinions of the state agency physicians, is well supported by the record. See, e.g., Sharp v. Colvin, 660 F. App'x 251, 259 (4th Cir. 2016) (affirming the Law Judge's determination that the plaintiff's medical treatment, which included injections, pain medication, and physical therapy, "was conservative, and that her course of treatment supported a conclusion that she was able to maintain a routine work schedule"); Bishop v. Comm'r of Soc. Sec., 583 F. App'x 65, 66 (4th Cir. 2014) (affirming the Law Judge's decision to reject the opinion of a treating physician that was "inconsistent with the mild to moderate diagnostic findings" and "the conservative nature of [the plaintiff's] treatment").

In affirming the Commissioner's final decision, the court does not suggest that Mr. Kidd is free of all pain and discomfort. Indeed, the medical evidence confirms that plaintiff suffers from

a musculoskeletal impairment that can be expected to result in subjective limitations. However, the record simply does not include clinical findings or objective test results that are consistent with totally disabling symptomatology, and instead indicates that plaintiff's symptoms are subject to reasonable medical control through essentially conservative treatment measures. It must be recognized that the inability to work without any subjective complaints does not of itself render a claimant disabled. See Craig, 76 F.3d at 592. It appears to the court that the Law Judge considered all of the medical evidence, as well as all of the subjective factors reasonably supported by the record, in adjudicating Mr. Kidd's claim for benefits. Thus, the court concludes that all facets of the Commissioner's final decision are supported by substantial evidence.

As a general rule, the resolution of conflicts in the evidence is a matter within the province of the Commissioner, even if the court might resolve the conflicts differently. Richardson v. Perales, supra; Oppenheim v. Finch, 495 F.2d 396 (4th Cir. 1974). For the reasons stated, the court finds the Commissioner's resolution of the pertinent conflicts in the record in this case to be supported by substantial evidence. Accordingly, the final decision of the Commissioner must be affirmed. Laws v. Celebrezze, supra.

The Clerk is directed to send certified copies of this memorandum opinion to all counsel of record.

DATED: This 29th day of August, 2018.

                                                                 Senior United States District Judge